IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FRANK MAYER,**
**Claimant Below, Petitioner**

**FILED**
**August 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.)   No. 24-ICA-519        (JCN: 2023021874)**

**CITY OF CLARKSBURG,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Frank Mayer appeals the December 2, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent City of Clarksburg ("Clarksburg") filed a response.[1] Mr. Mayer did not reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which closed the claim for temporary total disability ("TTD") benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board's order but no substantial question of law. For the reasons set forth below, a memorandum decision vacating and remanding for further proceedings is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 24, 2023, while employed by Clarksburg, Mr. Mayer was mowing when he slipped and fell, landing with his leg bent underneath him. Mr. Mayer was seen at the United Hospital Center Emergency Room on the date of the injury, with a chief complaint of left knee pain and right shoulder pain. The assessment was a patella fracture and right shoulder strain. Mr. Mayer filed an Employees' and Physicians' Report of Occupational Injury dated May 24, 2023, indicating that he suffered an injury to his right shoulder and left leg when he was cutting grass on a hillside, and he fell when the bank gave way. The physician's portion was signed at United Hospital Center and notes an occupational injury to the right shoulder and left knee.

Mr. Mayer was seen by William Dahl, M.D., on May 26, 2023, and the assessment was a rupture of the left quadriceps, a closed fracture of the left patella, and an injury of the right shoulder. Dr. Dahl opined that Mr. Mayer would benefit from surgical fixation of the left quadriceps rupture. The claim administrator issued an order dated May 31, 2023,

---

[1] Mr. Mayer is represented by J. Thomas Greene, Jr., Esq., and T. Colin Greene, Esq. Clarksburg is represented by James W. Heslep, Esq.

holding the claim compensable for a strain of muscle, fascia, and tendon involving the right shoulder and upper arm; a strain of the left quadriceps; and a closed fracture of the left patella.

On June 1, 2023, Mr. Mayer underwent a left quadriceps repair performed by Joshua Sykes, M.D. It was noted that a couple of loose bone fragments were removed. A post-operative office note dated June 19, 2023, was signed by Miranda McCroskey, NPC. Mr. Mayer reported that he had a constant sharp pain in his left leg that worsened with ambulation. Mr. Mayer was instructed to remain in his knee immobilizer with his knee straight for four weeks. On August 1, 2023, Dr. Sykes directed Mr. Mayer to remain in the knee immobilizer for ambulation. Mr. Mayer was to remain off work until his follow-up appointment.

Mr. Mayer was seen by Dr. Sykes on October 10, 2023. Dr. Sykes assessed status post tendon repair, effusion of the left knee, and rupture of the left quadriceps tendon. Dr. Sykes ordered an MRI of the left knee and stated that Mr. Mayer was to stay off work until he is reevaluated. On October 16, 2023, Mr. Mayer underwent an MRI of the left knee revealing a prominent buckle-handle tear of the medial meniscus, bone marrow edema/bone bruise of the medial tibial plateau, and moderate knee joint effusion. Mr. Mayer was seen by Dr. Sykes on November 27, 2023, and he reported a constant sharp, burning, and throbbing pain that he rated 5/10, and is worse with activity; that he had numbness and tingling when sitting; that his knee continued to swell; and that he was progressing with physical therapy.

On December 28, 2023, Mr. Mayer underwent a CT of his right shoulder, which had the impression of severe acromioclavicular and mild glenohumeral osteoarthritis, retracted tears of the supraspinatus and infraspinatus tendons, a suspected full thickness tear of the superior bundle of the subscapularis, and suspected extensive degenerative labral tearing. On January 23, 2024, Dr. Sykes assessed Mr. Mayer with status post tendon repair, rupture of left quadriceps, and right rotator cuff tear. Dr. Sykes noted that Mr. Mayer had a work-related shoulder tear for over twenty years that had progressed from his previous MRI. Mr. Mayer was seen by Nick Zervos, M.D., on February 6, 2024, for status post left knee injury with fall and quadriceps tear with posttraumatic arthritis.

Mr. Mayer was evaluated by Kelly Agnew, M.D., on February 7, 2024. Dr. Agnew stated that Mr. Mayer had severe preexisting osteoarthritis involving his left knee and that he had a left knee arthroscopy about twenty years prior. Dr. Agnew opined that this prior surgery, the passage of time, and Mr. Mayer's body habitus have contributed to the osteoarthritic changes. Dr. Agnew noted that a left patella fracture was part of the compensable injury, but he opined that the fracture was actually an avulsion of bony fragments at the site of a quadriceps tendon avulsion and that the avulsion was appropriately repaired. Dr. Agnew further opined that the postoperative MRI did not

2

suggest persistent or recurrent tearing or persistent or recurrent patella fracture fragments at the site of the prior avulsion. Dr. Agnew stated that, at the time of the evaluation, Mr. Mayer had no visible, palpable, or measurable effusion and no atrophy above or below the knee. Dr. Agnew further noted that Mr. Mayer had completed physical therapy. Mr. Mayer was found to be at maximum medical improvement ("MMI") for the compensable knee injury.

According to Dr. Agnew, Mr. Mayer had a large retracted, irreparable right rotator cuff tear, that was documented in 2003, and that this tear was never repaired. Dr. Agnew opined that there was nothing on the recent CT scan with arthrogram of the right shoulder to suggest an acute injury and that all the changes were chronic. Dr. Agnew further opined that there was no evidence of a lingering strain and that he had findings as expected from the chronic rotator cuff disruption. Dr. Agnew found that Mr. Mayer had reached MMI for the shoulder and upper arm portion of his compensable injury.

Dr. Zervos authored correspondence dated March 6, 2024, opining that Mr. Mayer sustained a work-related rupture of his left quadriceps. Dr. Zervos noted that prior to the injury Mr. Mayer was not experiencing significant pain or discomfort in his left knee and that after the injury he continues to be limited by pain. Dr. Zervos opined that the work injury aggravated Mr. Mayer's knee and accelerated his arthritis symptoms such that he now needs a total knee replacement.

On March 11, 2024, Mr. Mayer was seen by Dr. Sykes for a preoperative visit for a right reverse shoulder arthroplasty. Dr. Sykes opined that Mr. Mayer's rotator cuff tear was not repairable due to the chronic nature and size of the tear with massive retraction, and he noted that a large portion of the tear had been present since 2003. On May 13, 2024, Dr. Zervos indicated that Mr. Mayer would remain off work from February 6, 2024, through October 1, 2024.

By order dated March 15, 2024, the claim administrator suspended Mr. Mayer's TTD benefits based on the February 7, 2024, report of Dr. Agnew, who determined that Mr. Mayer was at MMI for his compensable injuries. On April 23, 2024, the claim administrator issued an order closing the claim for TTD benefits. Mr. Mayer protested this order.

Mr. Mayer was deposed on August 5, 2024. He testified that on May 24, 2023, he was cutting grass on a hillside when the bank gave way, and he fell, rolling backward and landing in a creek and injuring his left knee and right shoulder. Mr. Mayer stated that after the compensable injury he underwent knee surgery and had physical therapy for his left knee. Mr. Mayer testified that, in the 1990s, he had surgery to repair a torn left ACL and that he was able to return to work with no problems after this surgery. Mr. Mayer stated

3

that, prior to his fall on May 24, 2023, he was not having any difficulties with his left knee or right shoulder.

On December 2, 2024, the Board affirmed the claim administrator's order closing the claim for TTD benefits. The Board found that Mr. Mayer had reached MMI for his compensable injury as Dr. Agnew determined in his February 7, 2024, report. Mr. Mayer now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Mr. Mayer argues that his treating surgeon, Dr. Zervos, opined that he remained temporarily and totally disabled until at least October 1, 2024. Mr. Mayer further argues that Dr. Zervos has treated his left knee and is, therefore, in a better position to determine the timeline of recovery. Finally, Mr. Mayer argues that Dr. Agnew's report conflicts with the opinions of both Dr. Sykes and Dr. Zervos, who believe further left knee treatment is necessary.

In *Workman v. ACNR Resources, Inc.*, No. 23-638, 2025 WL 1603935 (June 6, 2025), the Supreme Court of Appeals of West Virginia ("SCAWV") found that the Board did not perform an adequate analysis and simply took the word of one physician over another with no explanation and despite the claimant introducing evidence that she remained temporarily and totally disabled due to the compensable injury. The SCAWV cited its holding in *Dunlap v. State Workmen's Comp. Comm'r*, 160 W. Va. 58, 232 S.E.2d

4

343 (1977), that "[i]f an injured employee provides some evidence to demonstrate that a particular injury did arise from the subject industrial accident, absent evidence which to some degree of certainty attributes the injury to a cause other than the subject accident, it will be presumed to have resulted from such accident." *Id*. at 58, 232 S.E.2d at 343, syl. pt. 2.

Here, the Board determined that Mr. Mayer failed to establish that he remained temporarily and totally disabled beyond February 7, 2024, based on Dr. Agnew's finding of MMI. Upon review, we conclude that the Board was clearly wrong in finding that Mr. Mayer reached MMI on February 7, 2024, based on Dr. Agnew's report without adequately considering the opinions of Drs. Sykes and Zervos. Given the SCAWV's holding in *Workman*, we find that the Board failed to adequately analyze the evidence in this claim and further, failed to explain its decision to adopt Dr. Agnew's opinion over that of Drs. Sykes and Zervos.

Accordingly, we vacate the Board's December 2, 2024, order, and remand the matter to the Board for further proceedings consistent with this decision.

Vacated and Remanded.

**ISSUED:** August 6, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White